UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA R. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:09-cv-1113-WTL-DML |
| | ) |
| GENE B. GLICK CO., INC., et al., | ) |
| | ) |
| Defendants. | ) |

### ENTRY ON PENDING MOTIONS

This cause is before the Court on the following motions: (1) Defendant Avert Security, LLC's motion for judgment on the pleadings; (2) Defendant Indiana Quadel Consulting Corporation's motion for summary judgment; and (3) Defendants' Gene B. Glick Company, Inc. and Carriage House East III Associates, LLP's motion for summary judgment. The Plaintiff has not filed a response to any of the motions, and the time for doing so has expired. Therefore, the motions are ripe for resolution and the Court, being duly advised, resolves each motion as follows.

### Material Facts

The material facts of record, viewed in the light most favorable to Plaintiff Angela R. Williams, are as follow.

At all relevant times, Williams was a tenant in the Carriage House East III apartment complex in Indianapolis, which is owned by Carriage House East III Associates, LLP ("Carriage House"). Carriage House is a limited liability partnership and a wholly-owned subsidiary of Gene B. Glick Co., Inc. ("Glick"). Glick is a corporation engaged in the business of property

management. Glick employs Tracy Wiley as the property manager at the Carriage House apartments and Pam Scott as a regional property manager.

Carriage House hired a private company, Avert Security, LLC ("Avert"), to provide security for Carriage House. Avert employed Chad Butts as a security officer on the Carriage House grounds.

Williams receives Section 8 housing subsidies through the U.S. Department of Housing and Urban Development ("HUD"). HUD contracts with the Indiana Housing Community Development Authority, which in turn contracts with a private company, Defendant Indiana Quadel Consulting Corporation ("Quadel"). Quadel's duties include ensuring that apartment owners and managers respond to resident concerns in a timely manner. Quadel also remits Section 8 payments to property owners on behalf of tenants. As a general rule, Quadel refrains from involvement in eviction matters or lawsuits involving residents and owners.

This lawsuit stems from an incident that occurred on August 5, 2007. As Williams returned home at around 1:20 a.m. that morning, she observed Butts detaining two youths outside of the apartment complex. Williams approached Butts and attempted to intervene on behalf of the youths. Butts ordered Williams to stop interfering and to leave or he would arrest her. Eventually, the situation between Williams and Butts escalated to the point that Butts arrested Williams. The Indianapolis Metropolitan Police Department charged Williams with resisting law enforcement. Williams was acquitted of the charges brought against her on October 3, 2007, in a bench trial in Marion County Superior Court.

On August 17, 2007, Carriage House sent Williams a Notice of Termination informing Williams that, due to her arrest, Carriage House would not renew her lease at the end of August and that Williams would have to vacate her apartment by September 16, 2007. Williams did not

vacate the apartment. On September 7, 2007, Williams telephoned Quadel to enlist their assistance in the proposed eviction due to her arrest. Quadel contacted Carriage House and Glick to ensure that they were communicating with Williams and that Williams had an opportunity to discuss the proposed eviction with them. On September 25, 2007, Carriage House began eviction proceedings against Williams in Lawrence Township small claims court. Glick management later dropped the eviction proceedings. Williams was never evicted from her Carriage House apartment and continued to live in her apartment during the eviction proceedings.

On September 30, 2007, Carriage House provided its residents, including Williams, a written 60-Day Notification of Lease Revision stating that HUD had approved revisions in the lease and that as a result Carriage House would require tenants to sign a new lease that incorporated the revisions within 60 days. Wiley Aff. Ex. H. The Notification further stated that if a resident did not either sign the new lease or give notice they intended to vacate the apartment, Carriage House would then send the tenant a 30-day Notice of Termination. If the resident accepted the revisions, the revised lease had to be signed by November 30, 2007.

On November 29, 2007, Williams telephoned Quadel to enlist their assistance in evaluating this proposed new lease. Quadel does not usually review leases for tenants, but agreed to do so in this case because of the recent dispute between Williams and Carriage House. On November 30, 2007, Williams, and representatives of Quadel and Carriage House participated in a telephone conference call to review the proposed lease. Williams attempted to discuss her August 2007 arrest during this call, while the other participants tried to focus on the lease that was due to be signed that day. Williams became frustrated with the conversation and hung up the telephone.

Williams signed the lease on November 30, 2007, but indicated that she was doing so under duress by writing the words "under duress" next to her signature on the lease. Williams did not specify why she felt under duress or what her objection was to the lease. Williams continues to live in her Carriage East apartment.

On July 9, 2008, Williams was provided with a notice of an upcoming mortgage inspection to be held on July 14, 2008. Apartments would be chosen at random for inspection on that date by the inspector. It is unclear whether a copy of the notice was delivered to each tenant individually. Two individuals, Wiley and HUD inspector Gregory Johnson, entered Williams' apartment in her absence and conducted an inspection. Williams alleges that four of her children, all minors, were present in the apartment during the inspection and that the younger children were upset by finding two strangers in their apartment. Williams alleges that her 14-year old son told Wiley and Johnson that their mother was not home and they should come back later. Williams alleges Wiley and Johnson did not leave at the direction of her son, but stayed in the apartment to complete their inspection. Carriage House is silent on the matter of the presence of Williams' minor children in the apartment during the inspection.

**Avert Security, LLC's Motion for Judgment on the Pleadings (Dkt. No. 39)**

In reviewing a motion for judgment on the pleadings, the Court must apply the same standard that applies to a motion to dismiss under Rule 12(b)(6), and therefore must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

## Discussion

Avert moves for judgment on the pleadings on nine of Williams' fifteen counts, arguing that Williams filed her Complaint outside of the two-year statute of limitations allowed for those counts. This argument is without merit.

A statute of limitation begins to run at the time the cause of action comes into existence. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). Avert correctly points to Ind. Code 34-11-2[1] as the statute of limitations in an action for injury to a person or character, which provides a two-year limitation. Ind. Code 34-11-2-4 provides no direction on the method of computation of the two-year period.

In cases where the statute of limitation is silent on the method by which to compute time, Ind. R. Trial P. 6(A) governs the computation of time. *Jenkins v. Yoder*, 324 N.E.2d 520, 521 (Ind. App. 1975) (relying on Rule 6 to calculate the time allowed for causes of action related to injuries to a person). Rule 6(A) provides that the day of the act from which the designated period of time begins to run shall not be included. In this case, the earliest possible day from which to count the two-year period is the day on which Williams was arrested, August 5, 2007. Excluding this day, we begin the two-year count on August 6, 2007. The earliest possible date that would conclude the two-year statute of limitations allowed by Ind. Code 34-11-2-4 is thus August 5, 2009,[2] the two-year anniversary of Williams' arrest. *See generally Basham v. Penick*,

---

[1] The applicable statute is Ind. Code 34-11-2-4.

[2] Avert assumes the date of accrual for each of the nine counts for which it seeks judgment is August 5, 2007. It is unnecessary to determine if August 5 is the date of accrual for each count,

849 N.E.2d 706, 709 (Ind. App. 2006 ); *Jenkins*, 324 N.E.2d at 521. Inasmuch as Williams filed her Complaint in Marion County Superior Court on August 5, 2009, it was filed within the two-year period allowed by Ind. Code 34-11-2-4. Accordingly, Avert's Motion for Judgment on the Pleadings is **DENIED**.

### Motions for Summary Judgment

As to both of the pending motions for summary judgment, the same standard applies. Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A court may find that facts claimed by the moving party do not exist, when those facts, alone or in conjunction with other admissible evidence, allow reasonable inferences to be drawn in the opposing party's favor which preclude summary judgment. S.D. Ind. R. 56.1(e). In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, [a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and the court is not required to scour the record in

---

as if the Complaint was timely filed for the earliest possible date of accrual, it was also timely filed for any later dates of accrual.

search of evidence to defeat a motion for summary judgment. *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

### *Indiana Quadel Consulting Corp.'s Motion for Summary Judgment (Dkt. No. 27)*

Four of the fifteen counts in Williams' Complaint are asserted against Quadel. First, Williams asserts a cause of action for defamation of character (Count II). Williams points to no specific statement by Quadel that she claims is defamatory. Rather, Williams refers, generally, to a "false accusation that [Williams] committed a crime." Complaint, ¶ 91. However, there is no evidence in the record that Quadel accused Williams of committing a crime. The evidence is that Williams twice enlisted the assistance of Quadel in representing her interests in discussions with Carriage House and/or Glick related to Williams' status as a Carriage House tenant. On September 7, 2007, Williams requested assistance in addressing Carriage House's decision to terminate Williams' lease due to her arrest. It is to be expected that in communicating with Carriage House and/or Glick personnel, at Williams' request, Quadel would have to refer to Williams' arrest. Whether the arrest turns out to have been justified or not is beside the point. It is a fact that Williams was arrested. On November 29, 2007, Williams again telephoned Quadel to enlist their assistance, this time with a revised lease Carriage House required residents to sign. The uncontraverted evidence of record is that during a telephone conference call with Williams, Quadel and Carriage House, it was Williams, not Quadel, who continually referred to her earlier arrest.

True statements never give rise to liability for defamation. *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind. App. 2005) (citing Ind. Const. art. I, § 10). Stating that Williams was arrested is a true statement, for which Quadel can not be held liable on a defamation claim. As Williams has made no allegation that Quadel said anything other than Williams was arrested,

and there is no evidence of any other statement by Quadel in the record, her defamation claim must fail.

Williams next asserts a cause of action for breach of contract against Quadel (Count III). Williams alleges that Quadel and others breached the lease agreement between Williams and Carriage House by refusing to accept the rental payments that Williams attempted to pay to Carriage House. Williams also alleges that Quadel, in some unspecified way, failed in its obligations to Williams and as a result Williams lost her Section 8 housing subsidy.

To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Breeding v. Kye's Inc.*, 831 N.E.2d 188, 191 (Ind. App. 2005). A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake. *Id.*

There is no evidence in the record that Williams ever lost her Section 8 housing subsidy. To the contrary, Quadel has provided evidence that it remitted payment of Williams' Section 8 housing subsidy to Carriage House without interruption. There also is no evidence in the record that Quadel was a party to any contract with Williams. Quadel is not a party to the lease agreement between Williams and Carriage House. A decision by Carriage House to refuse rental payments has nothing to do with Quadel. As there was no lease contract between Williams and Quadel, Williams' breach of contract claim must fail.

Next Williams asserts a claim against Quadel for duress (Count XIV). Williams alleges that Quadel, among others, made misrepresentations to her and that as a result of these misrepresentations Williams felt coerced into signing a new lease with Carriage House on November 30, 2007. Williams points to no provision in the lease that she alleges is unfair to her.

The only allegation of harm that Williams makes is that she felt confused of her rights at the time she signed the lease.

There is no evidence in the record to support a claim of duress. There is no allegation of any violence or threat of violence directed towards Williams by Quadel. There is no evidence in the record of any behavior on the part of Quadel that could be said to have deprived Williams of the free exercise of her own will. Without such evidence, the duress claim against Quadel must fail. *Youngblood v. Jefferson County Div. of Family and Children*, 838 N.E.2d 1164, 1170 (Ind. App. 2005).

Finally, Williams asserts a cause of action for violation of her civil rights (Count XV). Williams alleges that Quadel, among others, acted under color of law[3] to (1) claim that Williams was evicted; (2) pursue legal eviction; (3) refuse to accept rent; and (4) cause Williams' Section 8 housing subsidy to be terminated.

Section 1983 is not an independent source of tort liability. *Narducci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009). Rather, it is a means of vindicating rights, privileges or immunities that are guaranteed by either the U.S. Constitution or a federal statute. *Id*. Williams cites to no federal statute or provision of the U.S. Constitution that would guarantee her any right, privilege or immunity that was violated by the alleged behavior of Quadel. There is no evidence in the record that Williams' Section 8 housing subsidy was ever terminated. With regard to the three remaining allegations, even assuming they are true, they do not involve any constitutional or

---

[3] As we find that the harms complained of were not federal statutory or constitutional violations, we do not reach the question of whether Quadel, a private corporation that contracts with the Indiana Housing Community Development Authority, which in turn contracts with the U.S. Department of Housing and Urban Development, is a state actor for the purpose of this action.

federal statutory violations. In the absence of an articulated violation of federal law, Williams has no claim under 42 U.S.C. § 1983.

For the reasons set forth above, Quadel is entitled to summary judgment on all of the claims asserted against it in Williams' Complaint. Accordingly, Quadel's motion for summary judgment is **GRANTED** in its entirety.

### *Gene B. Glick Company, Inc.'s and Carriage House East III Associates, LLP's Motion for Summary Judgment (Dkt. No. 58)*

Eight of the fifteen counts in Williams' Complaint are asserted against Glick and/or Carriage House; they move for summary judgment on all of those counts. First, Williams asserts a cause of action for defamation of character against both Glick and Carriage House (Count II). To establish a claim of defamation, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). To be actionable, a statement must be both defamatory and false. *Id.* While Williams alleges both defamation and defamation per se in her Complaint, she points to no specific defamatory statement by Glick or Carriage House employees, other than to assert generally that the Carriage House management team claimed "that she had committed another crime, disturbing the Peace, for which she was not even charged." Complaint, ¶ 90. However, there is no evidence in the record that either Glick or Carriage House published any such statement; indeed, the only allegation in the complaint is that they made the statement to Williams herself. Complaint ¶ 60. Accordingly, Glick and Carriage House are entitled to summary judgment on Williams' defamation claim.

Next, Williams asserts a cause of action for breach of contract (Count III). Williams alleges that Glick and Carriage House breached the lease agreement between Williams and

Carriage House by attempting to evict her under a criminal conduct provision of her lease and by refusing to accept the rental payments that Williams attempted to pay to Carriage House.

To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Breeding*, 831 N.E.2d at 191. A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake. *Id.*

There is no evidence that a contract existed between Williams and Glick. Glick and Carriage House are separate entities and Glick is not a party to the lease between Williams and Carriage House.[4]

Regarding the claim that Carriage House breached the lease by attempting to evict Williams, the lease Williams signed expressly permits Carriage House to terminate the lease if it determines that the tenant has engaged in criminal activity, regardless of whether the tenant has been arrested or convicted for such activity. Wiley Aff. Ex. C ¶ 23(b). Carriage House relied upon this lease provision in its Notice of Termination to Williams. Wiley Aff. Ex. B. The only evidence of record is that Carriage House did, in fact, determine that Williams' behavior on the night of August 5, 2007, violated the terms of her lease. Based upon that determination, Carriage House was within its rights under the lease to institute eviction proceedings and therefore did not breach its contract with Williams.

---

[4] While it is possible that a parent can be held liable for the acts of another corporation, under an alter ego theory, as we find that Carriage House has not breached the contract, we do not consider whether Glick could have been liable under this theory. *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1192-95 (Ind. App. 2002). Plaintiff bears the burden of demonstrating the corporate form was ignored to the point that one corporation was a mere instrument of another. *Massey v. Conseco Servs., L.L.C.*, 879 N.E.2d 605, 609 (Ind. App. 2008).

With regard to the second basis for Williams' breach of contract claim, Carriage House acknowledges that it refused to accept Williams' rental payment on August 20, 2007, after it provided Williams with a 30-day Notice of Termination on August 17. Williams does not explain how this refusal of a rental payment is a breach of the lease, nor does she provide evidence of any damage she suffered as a result of the refused rental payment. Accordingly, the refusal of the rental payment does not support a cause of action for breach of contract, and Glick and Carriage House are entitled to summary judgment on that claim.

Williams next asserts a cause of action for unlawful eviction against Carriage House and Glick (Count IV). An actual eviction occurs when the tenant is deprived of the occupancy of some part of the demised premises. *Sigsbee v. Swathwood*, 419 N.E.2d 789, 794 (Ind. App. 1981). Williams was never deprived of the occupancy of her apartment. At all times during the judicial eviction proceedings, Williams continued to live in her apartment. Given that neither Carriage House or Glick actually evicted Williams, there can have been no unlawful eviction, and the Defendants are entitled to summary judgment on Williams' claim for unlawful eviction.

Next, Williams alleges that Glick and Carriage House failed adequately to supervise Butts (Count VI). Glick argues that it did not hire Avert, therefore it cannot be liable for any act of Butts. Carriage House argues that Butts is an employee of Avert, not Carriage House. Glick and Carriage House Brief at 18-19. ("The plaintiff … has not alleged that either Glick or Carriage House employed Mr. Butts. Rather, the plaintiff has acknowledged that Mr. Butts is an employees of Avert.") Carriage House also argues that Avert is an independent contractor of Carriage House, thus not an employee, under the analysis set forth in *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001).

A principal is generally not liable for the negligence of an independent contractor. *Indiana Dep't of Transp. v. Howard*, 879 N.E.2d 1119, 1122 (Ind. App. 2008). There is no evidence in the record that Butts or Avert was an employee of Carriage House for whom it (or Glick) was responsible. Without such evidence, Williams' claim against them for failure to supervise Butts fails.

In Count XII of her Complaint, Williams asserts six separate claims of negligence. In bringing a negligence claim, a plaintiff must show that (1) that the defendant owed plaintiff a duty; (2) that it breached the duty; and (3) that plaintiff's injury was proximately caused by the breach. *A.S. v. LaPorte Reg'l Health Sys. Inc.*, 921 N.E.2d 853, 856 (Ind. App. 2010). Williams does not specify either the duty or the injury for any of the six negligence claims she asserts against Glick and Carriage House.

With regard to three of the negligence claims, the facts in the record do not support Williams' allegations. First, Williams asserts that Carriage House's acceptance of Butts' version of the August 5 incident and its use of this incident to terminate Williams' lease and subsequently begin eviction proceedings was negligent. The relationship between Williams and Carriage House is a contractual relationship. The lease expressly provides that the landlord may terminate the lease if it determines that the tenant has engaged in criminal activity, regardless of whether the tenant has been arrested or convicted for such activity. Wiley Aff. Ex. C ¶ 23(b). Williams points to no duty that Carriage House had to her that would require it to forego exercising its contractual right to terminate Williams' lease.

Next, Williams asserts that Glick employees Wiley and Scott told Williams that she had 30 days to vacate her apartment, but did not inform her of her right to subsequent judicial review. As Carriage House points out, the Notice of Termination specified that if Williams did

not vacate, the next step would be judicial action. Wiley Aff. Ex. B ("If you do not … vacate the premises by this date, we will seek to enforce the termination by bringing judicial action, at which time you may present a defense."). There is no evidence in the record to support the allegation that Carriage House did not inform Williams of the procedure it would follow.

Finally, Williams alleges in her Complaint that Glick employee Wiley antagonized Williams when they encountered each other in a night club by laughing and gazing at her. This claim must fail because Wiley has submitted an affidavit in which she denies that this incident occurred and Williams has submitted no evidence to refute that affidavit. *See Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) ("[M]ere allegations of a complaint are not evidence" and cannot be used to defeat summary judgment in the face of admissible evidence to the contrary.).

In two of her remaining negligence claims, Williams articulates no specific duty that either Carriage House or Glick had toward her that was breached by the actions to which she objects.[5] First, Williams points both to a statement by Glick employee Scott that Glick always wins in court, presumably implying that it would be futile for her to fight their attempt to evict her. Next, Williams asserts the Defendants "decided to spontaneously change the charges against Williams from Resisting Arrest to Disturbing the Peace, without Legal and/or proper

---

[5] The Court does not mean to suggest that Williams was required to articulate the claims in her Complaint with more particularity than she did. Rather, in the face of the summary judgment motions, Williams was required to respond with evidence, which she did not do. "A motion for summary judgment requires the responding party to come forward with the evidence that it has-it is 'the put up or shut up moment in a lawsuit.'" *Eberts v. Goderstad*, 569 F. 3d 757, 767 (7th Cir. 2009) (citing *Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004)).

grounds." Without the benefit of some explanation from Williams, which she chose not to provide, the Court fails to see how either of these allegations support a tort claim.

Finally, Williams asserts that Glick employee Wiley was negligent when she entered Williams' apartment when her children were home alone. As discussed below, Williams asserts a separate cause of action for invasion of privacy based upon the same incident. Inasmuch as Williams fails to articulate any additional tort theory of recovery based upon this alleged incident, the Court finds the mention of it in Count XII to be merely redundant.

Turning to Williams' cause of action for invasion of privacy (Count XIII), Glick and Carriage House assert that on July 9, 2008, Williams was provided notice of an upcoming inspection scheduled for July 14, 2008, and that Williams did not inform them that she did not want them to enter her apartment in her absence until after they had concluded the July 14, 2008 inspection. However, the Defendants do not refute Williams' assertion that Carriage House representative Wiley let herself and a HUD representative, Gregory Johnson, into her apartment with a key unannounced, that her four minor children were in the apartment alone during the inspection, and that Williams' 14-year-old son told Wiley and Johnson that his mother was not home and they should come back later but that they refused to do so and instead completed their inspection. They also do not refute Williams' asserts that her children were upset at seeing two strangers in her apartment, one of them to the point of crying. Complaint ¶ 136, 138-140.

An action for invasion of privacy by intrusion requires a showing by the plaintiff that there was an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home. *Mills v. Kimble*, 909 N.E.2d 1068, 1079 (Ind. App. 2009). To be actionable, the intrusion must "be something which would be offensive or objectionable to a reasonable person." *Id.* The Court cannot say that the circumstances alleged by Williams–and unrefuted by the

15

Defendants–are insufficient to constitute invasion of privacy. A reasonable jury could find that adults entering and remaining in a home with children alone and ignoring the direction to leave, where no emergency existed, is offensive and objectionable. Defendants' motion on Count XIII is denied.

In Count XIV, Williams asserts a claim of duress. Williams alleges that Glick and Carriage House, among others, made misrepresentations to her and that as a result of these misrepresentations Williams felt coerced into signing a new lease with Carriage House on November 30, 2007. There is no evidence in the record to support this claim. There is no allegation of any violence or threat of violence directed towards Williams by Glick or Carriage House. There is no evidence in the record of any behavior on the part of Glick or Carriage House that could be said to have deprived Williams of the free exercise of her own will. Without such evidence, the duress claims against Glick or Carriage House must fail. *Youngblood*, 838 N.E.2d 1164, 1170 (Ind. App. 2005).

Finally, Williams asserts her § 1983 claim (Count XV) against Glick and Carriage House. Her claim against them fails for the same reason as Count XV fails against Quadel.

For the reasons set forth above, Glick's and Carriage House's motion for summary judgment is **GRANTED** with regard to all claims asserted against them except Count XIII, invasion of privacy. Their motion is **DENIED** as to that claim.

### Conclusion

For the reasons set forth above, Quadel's motion for summary judgment is **GRANTED** in its entirety; no claims remain against Quadel. Avert's motion for judgment on the pleadings is **DENIED** in its entirety. Glick's and Carriage House's motion for summary judgment is

```
```

**GRANTED IN PART AND DENIED IN PART**; the only claim that survives against them is

Count XIII, invasion of privacy.

    SO ORDERED:   06/14/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification